THE MANHATTAN.

(District Court, E. D. New York. April 2, 1909.)

1. WHARVES (§ 20*)—INJURY TO VESSELS—OBSTRUCTIONS IN BERTH.

Where a wharf used for hire is so located as to have a very small amount of water in a berth at low tide, so that boats lying there necessarily rest on the bottom, the owner must be held responsible for injuries resulting from anything in the nature of permanent obstructions in the bottom.

[Ed. Note.—For other cases, see Wharves, Cent. Dig. §§ 36, 37; Dec. Dig. § 20.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. WHARVES (§ 20*)—INJURY TO VESSELS—CONTRIBUTORY NEGLIGENCE.**

Where those in charge of a scow, in a berth where she was injured by an obstruction on the bottom at each succeeding low tide, allowed her to remain after knowledge of the obstruction and when the boats' position could have been changed, the owner is entitled to recover from the wharf owner only for the injury received before they had such knowledge.

[Ed. Note.—For other cases, see Wharves, Cent. Dig. § 40; Dec. Dig. § 20.*]

In Admiralty.

Foley & Martin, for libelant.
John J. Trapp, for respondent.

CHATFIELD, District Judge. The libelant is the owner of a scow, the Manhattan, upon which stone for paving was being taken to a company doing work at Great Neck, L. I., and which scow was, upon the 28th day of June, 1905, brought alongside of a dock upon property belonging to the respondent. Some correspondence had been had with the husband of the respondent, as her agent, and payments for the use of the dock were made to the respondent, through her agent. The respondent attempts to show that the dock was maintained and used by the husband of said respondent in connection with a coal business, and that she was not responsible therefor. It also appears from the testimony that the bottom along the face of the dock consisted of sand, with more or less mud, but principally a sandy bottom, and that boulders were scattered throughout the sand, but that in years previous all boulders had been removed, especially at the time of the construction of the dock.

Some differences of testimony as to the various occurrences appeared in the course of the trial, but most of these were cleared up, and the fact seems to be that the boat in question was brought into the berth, and as the tide went out rested upon the bottom, where she apparently, as had every other boat using the berth worked or settled, under the influence of swells from passing steamers, and of the tide itself. In this way, a stone which was afterwards removed, and about which several of the witnesses testify, punctured or broke part of the planking of the bottom of the scow, and at each low tide thereafter the vessel continued to be damaged, until she was taken away. The testimony showed that another scow in the same location was held away from the stones which did the damage to the Manhattan, and her cargo removed while she was thus held in a position free from danger. The evidence shows plainly that the Manhattan could have been likewise saved from considerable injury if she had not been allowed to remain in the position in which she was first injured, and it was not shown that she was so impaled upon rocks, or sunk alongside of the dock in such a manner, that she could not have been moved by the force available at the time. The testimony shows satisfactorily to the court that the respondent knew, or should have known, of the presence of rocks which created a constant source of danger along the front of the dock. The libelant's boat was there

under contract, and was entitled to a safe berth. This it did not receive, and the defect lay in the presence of the stone subsequently removed, which must have gradually worked to the surface before the Manhattan was placed in the berth.

. In a berth used in the way in which this one was continually used, with a very small amount of water at low tide, so that each boat lying at the wharf must necessarily become imbedded in the mud at each low tide, the owner must be held responsible for anything in the nature of permanent obstructions. An object by chance floating in or becoming imbedded and causing injury before its presence is noticed, may not be ground for holding the owner responsible if that injury results before reasonable time to discover the presence of the obstruction can be had, but the removal of such dangers as those causing the injury to the Manhattan would seem to be within the reasonable notice and control of the person owning the dock.

It is evident, however, that the Manhattan suffered much greater injury because those in charge of her allowed her to remain in the dangerous situation. Inasmuch as she was not sunk at the first injury, but floated with the tide and with each subsequent tide, it would seem that the libelant is only entitled to recover for the injuries which he could not prevent.

The libelant may have a decree for the damage which he incurred from the injury to the boat prior to the time when she floated clear of the obstruction, the day after her arrival.